IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHAD BROCIOUS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. |
| | ) |
| BORDEN WASTE AWAY | ) |
| SERVICE, INC., | ) |
| 605 N. Wildwood Ave. | ) |
| Elkhart, IN  46515, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Chad Brocious ("Chad"), by counsel, Michael P. Misch, and Anderson, Agostino & Keller, P.C., and for his Complaint against Borden Waste Away Service, Inc. ("BWAS"), states and alleges the following:

### I.  NATURE OF THE ACTION:

1. Chad", an individual with a qualified disability, brings this action against BWAS alleging that BWAS discriminated against Chad because of his disability and in contravention of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"), and The Rehabilitation Act of 1973 29 U.S.C. § 794 et seq. ("Rehab Act").

### II.  THE PARTIES:

2. Chad Brocious is a resident of St. Joseph County, Indiana, presently residing at 1811 Lincolnway West, Osceola, Indiana 46561.

3. At all relevant times, Borden Waste Away Service, Inc., was incorporated in the

State of Indiana and had its principal place of business located at 605 N Wildwood Avenue, Elkhart, Indiana 46515.

### III.  JURISDICTION AND VENUE:

4. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331.

5. Chad is an "employee" as that term is defined by 29 U.S.C. § 630(f).

6. BWAS is a qualified "employer" as the term is defined by 29 U.S.C. § 630(b).

7. The acts of BWAS's administrator's office, officers, managers, supervisors, employees, or agents, are also the acts of BWAS.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as all events, transactions, occurrences, and material acts of BWAS's administrators, officers, managers, supervisors, employees, or agents, concerning the matter have arisen within the geographical environs of the Northern District of Indiana.

9. Chad is bringing these proceedings within the time limits as identified in the Equal Employment Opportunity Commission Form 161, issued under mailing date of November 26, 2016.  A photocopy of the aforesaid Equal Employment Opportunity Commission Form 161 is attached hereto, and made a part hereof and identified as "Plaintiff's Exhibit A."  Chad received the Form 161 on or about November 29, 2016.  Therefore, Chad timely filed this action within ninety (90) days of her receipt of EEOC Form 161.

10. Prior thereto Chad timely initiated his Equal Employment Opportunity Commission proceedings by filing of a certain "Charge of Discrimination", as signed and filed by Chad on April 6, 2016.  A photocopy of the aforesaid "Charge of Discrimination" is attached

hereto, and made a part hereof and identified as "Plaintiff's Exhibit B."  Therefore, Chad timely initiate his action with the EEOC.

## IV.  FACTUAL STATEMENT OF THE CLAIM:

11.    Chad was employed by BWAS from approximately October 2013, through February 5, 2016, the effective date of his termination.

12.    Chard was hired by BWAS as a truck driver.

13.    At the time Chad was hired by BWAS he was provided with health insurance.

14.    Chad was an exemplary employee and received great reviews/remarks from his supervisor and manager about his job performance.

15.    In approximately October 2015, Chad begain suffering from undefined health issues, and he informed BWAS's management about the same.

16.    In November of 2015, Chad consulted with a Neurologist, Kevin R. Kristl M.D., relating to his recent onset illness, which he informed his employer.

17.    On approximately December 29, 2015, when Chad began experiencing stroke-like symptoms, that he was diagnosed with multiple sclerosis ("MS").

18.    On December 29, 2015, Chad was unable to communicate verbally due to the symptoms he was experiencing related to the MS.

19.    On December 29, 2015, Chad's Neurologist, Kevin R. Kristl M.D., drafted a letter on behalf of Chad to inform his employer of his disability and his future prognosis.  A photocopy of the aforesaid December 29, 2015 correspondence is attached hereto, and made a part hereof and identified as "Plaintiff's Exhibit C."

20.    Dr. Kristl indicated that Chad was lucky that the MS was caught early and that he

did not "feel that he is a danger in any way in his job as a truck driver."

21. The December 29, 2015 letter drafted by Dr. Kristl also stated that Chad would "be starting a medication to prevent future attacks, but this will begin slowly in the upcoming weeks."

22. Over the next several weeks, Chad and his physicians worked to find a medication that properly treated his symptoms related to MS.

23. BWAS's plan administrator denied the specific medication that was recommended by Dr. Kristl, despite its success in treating his MS symptoms when given on a trial basis, which delayed Chad's recovery.

24. On January 21, 2016, Dr. Kristl drafted another letter on Chad's behalf which indicated the medical necessity for a specific drug, and also stated that once Chad is treated with that specific drug for a period of 2-3 weeks he would "expect Mr. Brocious's symptoms to improve once he completes this therapy." A photocopy of the aforesaid January 21, 2016 correspondence is attached hereto, and made a part hereof and identified as "Plaintiff's Exhibit D."

25. Thus, Chad would have been ready willing and able to return to work no later than Mid-February, which is approximately 6 weeks from the time he was initially unable to return to work due to his disability.

26. While Chad was on leave from work due to his recent diagnosis of MS, he had filled out the necessary paperwork to receive family medical leave as required by Federal law as articulated pursuant to the Family Medical Leave Act, but the management of BWAS alleges it never received the necessary paperwork.

27. Despite this allegation Chad and his treating physician were in constant contact

with the management of BWAS relating to his leave and his current condition.

28. The communications included numerous text messages between Chad and Brian Mallo, as it was difficult for Chad to communicate verbally due to the symptoms related to his recently diagnosed MS.

29. Additionally, Chad ensured that his newly diagnosed disability was communicated to BWAS through a friend and co-worker DJ Riskovitch.

30. Mr. Riskovitch informed Brian Mallo and Robert Anderson, supervisor and manager over Chad, that Chad had been diagnosed with MS.

31. Chad returned to work on January 29, 2016 to discuss his disability, needs for accommodations, and return to work with John Good and Brian Mallo.

32. During the conversation with John Good and Brian Mallo, Chad was informed that he could return to work if he was cleared by the Department of Transportation ("DOT").

33. During the aforementioned conversation, the administration of BWAS gave Chad the phone number for DOT and had him call DOT on the spot.

34. DOT informed Chad that he had no restrictions and was cleared to work as a truck driver with CDL credentials.

35. After hearing that Chad had no restrictions to his CDL and was cleared to work by DOT, management alleged that Chad had failed to fill out the proper FMLA paperwork for the time he had taken off.

36. It was not alleged that he had failed to fill out the necessary forms until approximately January 29, 2016, and no communications with Chad during the month of January ever indicated any deficiencies in the FMLA paperwork or the absence of FMLA paperwork.

37. On Friday, January 29, 2016, Chad attempted to again fill out the necessary

paperwork, but the individual in human resources was not in her office that day to provide him with the paperwork.

38. Chad returned on the following Monday, February 1, 2016, to fill out the paperwork, but at that time was told it was too late.

39. Chad was terminated via written correspondence on February 5, 2016. A photocopy of the aforesaid February 5, 2016 correspondence is attached hereto, and made a part hereof and identified as "Plaintiff's Exhibit E."

40. The correspondence indicated two reasons for termination.

41. The first was that Chad's FMLA paperwork was not received.

42. The second reason given was that Chad was medically disqualified from driving.

43. Both reasons given were false.

44. Chad had file his FMLA paperwork and provided information from his physician to support his FMLA request, as evidenced by Exhibits C and D attached hereto.

45. Chad was never medically disqualified from driving as a search of his driving record and the finding of his neurologist clearly show.

46. The reasons given for termination were pretextual.

47. The actual reason Chad was terminated was due to his disability, specifically his diagnosis of MS.

48. Upon information and belief, at the time of Chad's termination, BWAS had a self-funded health plan, which caused BWAS to be individually responsible for the first portion of Chad's medical bills.

49. BWAS terminated Chad so it did not have to pay the potentially significant and on-going medical bills associated with Chad's disability.

50. BWAS terminated Chad in advance of his need for reasonable accommodations of intermittent time off of work related to his MS.

51. Additionally, BWAS" ill intent and financial motivation is also evidenced by the fact that BWAS back billed Chad for trash services.

52. All similarly situated employees of BWAS receive free trash service while employed.

53. Chad was billed for trash service beginning on 9/20/15.

54. Chad as continued to be billed for trash service after his termination and after he informed BWAS that he did not want their services any longer.  A photocopy of the aforesaid invoice is attached hereto, and made a part hereof and identified as "Plaintiff's Exhibit F."

55. Chad's requested time off due to treatments being administered for his MS was a reasonable accommodation.

56. BWAS did not want to provide the requested accommodation of time off as required by law, specifically FMLA, which was a reasonable accommodation under the ADA.

57. Chad was ready willing and able to perform all of the essential functions of his job, he merely needed time off to receive medical treatment related to his disability.

58. It is clear that BWAS was well aware of the need for Chad's accommodation, was well aware of Chad's disability, was well aware that the lack of accommodation was the direct cause of Chad's termination, and was well aware that they had completely failed to take control of the situation which was causing them to run afoul of the requirements of the Americans with Disabilities Act and FMLA.

59. BWAS wanted Chad terminated because he, and his disability, was causing BWAS's insurance premiums to rise.  BWAS clearly had a discriminatory purpose in their

failure to provide reasonable accommodation with their treatment of Chad.

60. As a result of all of the unlawful discriminatory acts on the part of BWAS, Chad was terminated, and therefore has lost his income, and more importantly, his insurance. Chad relied on his insurance from BWAS to pay for the medical treatment, and the necessary drugs to treat his multiple sclerosis.

61. Chad is currently financially unable to purchase any of the necessary medications that keeps his MS in remission.

62. Thus, Chad has not only lost income and insurance coverage, but has lost quality of life, and the ability to function in regular society.

63. As a result of the unlawful discriminatory acts on the part of BWAS, by its administrators, officers, managers, supervisors, employees, or agents, including but not necessarily limited to the aforementioned John Good, Brian Mallo, and Robert Anderson, Chad is a victim of violations of the Americans with Disabilities Act as amended, as a result of the conduct of BWAS.

64. Chad is also a victim of unlawful discrimination and violation of the Rehabilitation Act of 1973, as a result of the conduct of BWAS.

65. Chad is entitled to relief from and against the defendant.

## V.  DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff, Chad Brocious, demands judgment against the defendants, including any and all relief as may be provided under the Americans with Disabilities Act, and The Rehabilitation Act of 1973, including but not necessarily limited to:

1. Both back pay and front pay, including compensation for medical treatment and drugs that would have been covered by insurance;

2. An award of pre-judgment interest;

3. An award of compensatory damages;

4. An award of punitive damages; and

5. An award of costs incurred by Plaintiff in his prosecution of this claim, including his reasonable attorney's fees, expert witness fees, as well as any court costs herein.

    /s/ Michael P. Misch
Michael P. Misch
Attorney No. 27970-71
ANDERSON AGOSTINO & KELLER, P.C.
131 South Taylor Street
South Bend, IN 46601
Telephone: (574) 288-1510
Facsimile: (574) 288-1650
Email: misch@aaklaw.com

## JURY DEMAND

Plaintiff hereby respectfully requests trial by jury.

    /s/ Michael P. Misch
Michael P. Misch
Attorney No. 27970-71
ANDERSON AGOSTINO & KELLER, P.C.
131 South Taylor Street
South Bend, IN 46601
Telephone: (574) 288-1510
Facsimile: (574) 288-1650
Email: misch@aaklaw.com